# Dan Middleton, Appellee, v. Everett A. Shanafelt, Appellant.

APPEALS AND ERRORS—*when finding of chancellor not disturbed.* The finding of a chancellor will not be set aside as against the weight of the evidence unless clearly and manifestly so.

Bill in equity. Appeal from the Circuit Court of Marion county; the HON. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912.

JONAS & HALEY, for appellant.

KAGY & VANDERVORT, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit in equity, growing out of the following acts and circumstances: In 1905 James L. Middleton, the father of appellee, who was employed by the Sandoval Coal and Mining Company at its mine at Sandoval, Illinois, purchased 160 acres of land located about a mile from Sandoval and gave a note secured by mortgage on the same for $3,200. Some six months later he conveyed the coal and mineral rights under the land to the Sandoval Coal and Mining Company for an expressed consideration of $4,-000. A few months afterwards the Coal and Mining Company and its superintendent Mr. Marshall, who owned most of the stock and with whom James L. Middleton appears to have been closely connected, went into bankruptcy, and about the same time Middleton went to appellant Shanafelt and offered to sell him said premises. Shanafelt then consulted with his brother-in-law, Albert A. Holstlaw, and they determined to make the purchase. They then executed

a note to James L. Middleton for $800 and each took a deed from him to eighty acres of the land. These deeds contained the following, among other provisions:

"Except the royalty to the coal and other minerals · lying beneath the surface of the above described tract of land previously deeded to the Sandoval Coal and Mining Company" and "subject to a mortgage for · $3.200 in favor of James H. Garrison."

Upon the trial both appellant and Holstlaw testified that they were to pay only $800 for the land and that Middleton said the Sandoval Coal and Mining Company was to pay off the mortgage. Middleton denied this and stated that the consideration for the land was to be $25 an acre or $4,000 in all; that of this amount Shanafelt and Holstlaw were to pay him $800 and assume the mortgage of $3,200 on the premises, which would make the total consideration $4,000. Appellee and Holstlaw subsequently paid $192 interest on the mortgage indebtedness of $3,200 but claim that they did so at the request of James L. Middleton. In the deed conveying the coal interests to the Coal and Mining Company, no mention was made of the mortgage indebtedness on the premises to Garrison.

The proof as to the value of the premises was somewhat conflicting and covered quite a range but it appears to show that the premises without the coal rights, were at the time of the sale to Shanafelt and Holstlaw, worth at least the sum of $4,000 which Middleton claimed to have been the price agreed upon.

The bankruptcy proceedings above referred to, were delayed from time to time, but in 1907 the Coal Company was adjudged a bankrupt and John S. Stonecipher was appointed trustee and took possession of the coal rights under the land in question. In June, 1908, the interest being in default on the $3,200 mortgage on the premises, the holder of the notes be-

gan foreclosure proceedings, making appellant Shana-felt, said Holstlaw, John S. Stonecipher, trustee, and James L. Middleton, defendants. Proceedings were had which resulted in a decree finding that by the deeds to them above mentioned, appellant and said Holstlaw had each assumed and agreed to pay one half of said encumbrance of $3,200 on said premises, together with the interest thereon; that there was due to the several complainants who were holders of the notes, from said Shanafelt and Holstlaw, for prin-cipal and interest on said notes, certain sums therein mentioned; and it was decreed that said Holstlaw and Shanafelt pay to the complainants within ten days from the date of the decree, said sums of money with interest, and that in default of said payments be-ing made, the said mortgaged premises be sold; that in case the moneys arising from said sale should be insufficient to pay the amount with interest due com-plainants, together with the costs and the expenses of sale, that the amount of said deficiency should be re-ported by the master and that upon the confirmation of his report said Holstlaw and Shanafelt, who were found personally liable for the payment of the said debt, pay to the complainants the amount of such de-ficiency and that complainants have execution there-for.

The land was subsequently sold by the master for $3,721.55, which was the full amount of the debt, in-terest and costs, and a certificate of purchase given to the purchaser. Afterwards an arrangement was brought about by James L. Middleton, with the trustee in bankruptcy and certain persons interested in the mine, as bond holders, whereby the mine property was sold to appellee, Dan Middleton, the son of James L. Middleton for $100,000, payable in monthly install-ments of $2,500 each. After some $17,000 of the pur-chase price had been paid on the new contract, a new

company was formed to take over the property and pay the balance of the purchase money. Before appellee could give the new company a perfect title to the property, the lien created by the decree of foreclosure had to be removed, and to accomplish this, appellee, with the assistance of the trustee, redeemed the premises from the master's sale, by paying the full amount of the debt, interest and cost to the master in chancery, thereby freeing the premises from the indebtedness and the lien of the decree. When this had been done, the property was conveyed to appellee who then deeded the same to the new company. Subsequently appellee filed his bill in this proceeding against appellant and Albert A. Holstlaw, to compel them to repay to him the money advanced by him to the master in chancery, to redeem the premises from said sale or such amount as the court should find right and equitable to be repaid to him on account of the redemption money he had so advanced.

Upon the trial the court found the issues in favor of appellee; that appellant and Holstlaw had agreed to pay the mortgage indebtedness on said premises as a part of the purchase price therefor and that appellant and Holstlaw had each become liable to pay appellee one half of the money so paid by him to the master in chancery to redeem said premises; that the premises owned by Holstlaw were worth $50 per acre, those owned by appellant $45 an acre and the coal underlying the land the sum of $12 per acre. It was accordingly decreed by the court that appellant and Holstlaw each pay one half of the redemption money so paid by him and that appellee have a lien upon said premises owned by them, for the payment of the same.

It was further ordered that in case of a failure to pay said amount within the time fixed by the decree that said premises, except the coal and other minerals lying beneath the surface thereof, be sold to satisfy

said debt and the costs. From this decree appellant Shanafelt has alone appealed.

It is contended on behalf of appellant here, that there is no equity shown in the case, that the remedy of appellee, if any, is at law, that there is no evidence to support the findings of the decree, that the evidence in the case shows that appellee never had any interest in the property but that James L. Middleton was the real party in interest and if any payment was made of the indebtedness for the redemption of the premises, it was a payment by James L. Middleton of his own indebtedness for the repayment of which he had no claim upon appellant and Holstlaw.

If the findings in the decree are supported by the evidence, then appellant and Holstlaw assumed the payment of the mortgage indebtedness at the time they purchased the top premises. They did not pay the debt but permitted the premises, including the coal interests, to be foreclosed and sold. They refused to redeem from the sale and it became necessary for appellee, who held a contract for the purchase of the premises, in order to protect large interests, to redeem from the foreclosure sale. That appellee had such an interest as entitled him to redeem from such sale, cannot be questioned. He was not a volunteer in any sense of the word but was compelled to make the redemption to protect very valuable interests. Having done this he had a right to compel appellant and Holstlaw to repay him for the money so advanced by him on their behalf. This right of recovery was an equitable right, whether it be in the nature of contribution or exoneration, which he had a right to enforce by securing a lien upon a portion of the premises owned by appellant and Holstlaw, that is, the surface without the coal rights. Even if it could be said that the other proofs in this case did not sustain the finding of the court that appellant and Holstlaw

assumed the payment of the mortgage indebtedness at the time they purchased the premises, yet the decree of the court in the foreclosure proceedings, introduced in evidence here, where the mortgage indebtedness was declared to be their debt and an execution awarded against them for any deficiency in case the premises did not sell for enough to pay the debt, was a sufficient basis to sustain appellee's claim for repayment from them in this suit.

The proofs in the case therefore appear to have established the liability of the two defendants to the bill. Nor does the evidence appear to us to show as claimed by appellant, that the real party in interest is James L. Middleton and that Dan Middleton had no interest in the premises in question which entitled him to maintain this suit. On the contrary the evidence discloses that James L. Middleton disposed of all his interest in the property long prior to the time this suit was brought. Appellee sometime afterwards obtained his interest in the same through a contract of purchase made with the trustee in bankruptcy. It is immaterial whether he did this at the request of James L. Middleton, the trustee, or the bond holders interested in the coal rights, or whether it was done upon his own initiative. Under the contract he had a legal right to make the redemption and was the only one who had the right to take a deed from the trustee to the property. The liability of appellant and Holstlaw to pay the debt had already been established by the decree in the foreclosure suit before appellee redeemed the premises. This suit was properly brought in the name of appellee.

The equities in the case appear from the record to be with appellee and we find no reason for disturbing the decree of the court below.

*Decree affirmed.*